# Richmond

BARRON LANE v. COMMONWEALTH OF VIRGINIA.

October 10, 1949.

Record No. 3582.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

M. M. Long and Geo. L. Taylor, for the plaintiff in error.

J. Lindsay Almond, Jr., Attorney General, and Henry T. Wickham, Assistant Attorney General, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Barron Lane, sometimes hereinafter referred to as defendant, is a police officer in the town of Big Stone Gap. The town has an ordinance which makes it unlawful for any person to "get or be drunk in any public place within" its limits.

On September 19, 1947, about ten p. m., Lane, on duty and in the full uniform of a police officer, arrested Archer G. Tate on a public street of Big Stone Gap on a charge of being drunk. During the attempt to search the person of Tate for concealed weapons, Lane struck him with a police billy or night stick and knocked him to his knees. After being handcuffed by Barron Lane, assisted by the father of the latter, Henry Lane, a former policeman and a police investigator for the Virginia Alcoholic Beverage Control Board, Tate was escorted to jail and a charge was entered against him for being drunk and resisting an officer. He was allowed to telephone friends to arrange bail, but being unable to secure bail that night, he was confined in a cell until the following morning. He suffered no loss of consciousness immediately after the blow he received, but in the morning was found to be in such a condition as to need medical attention, and he was removed to his home for that purpose. A physician examined him and found that he had the signs and symptoms of a brain injury and was paralyzed on his right side. His condition grew progressively worse and he was taken to a hospital where the doctors found that he had a "fissure fracture" of the skull which was thought to produce the paralysis.

In January, 1948, another physician was of opinion that Tate had "improved remarkably" after an operation on his skull, and that while further improvement was possible, he would never have a complete recovery from paralysis.

At the January, 1948, term of the Circuit Court of Wise County, an indictment was found against Lane, pursuant to the provisions of Virginia Code, 1942 (Michie), section 4402*, sometimes called the Maiming Act, with one count

---

*"If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be punished by confinement in the penitentiary not less than one nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall, in the discretion of the jury, be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."

charging that he "did unlawfully, feloniously and maliciously, with a certain club, strike, cut and wound one Archer G. Tate, with intent him, the said Archer G. Tate, to maim, disfigure, disable and kill etc."

On May 12, 1948, there was a trial by jury which returned this verdict:

"We, the jury, find the defendant Barron Lane guilty of *unlawful wounding* and fix his punishment at three (3) years in the State Penitentiary." (Italics added.)

The defendant moved the court to set aside the verdict and to grant him a new trial. Thereafter, on June 11th, the trial court set aside the verdict and granted the defendant a new trial. Neither the grounds of the motion nor the reason for the judgment are set out in the record before us.

On November 5, 1948, the defendant was again placed on trial. Thereupon, the defendant filed a plea setting out that, under the verdict of May 12, 1948, he was acquitted "of both malicious and unlawful wounding of the said Archer G. Tate, with intent to maim, disfigure, disable and kill the said Archer G. Tate, and was, in truth and in fact" convicted only of a misdemeanor, and that he should not and could not be tried under said indictment for anything other than a misdemeanor. His plea was overruled, and the case proceeded to trial before a jury.

On the second trial the hearing of the case required five days. Twenty-six instructions were given, nine for the Commonwealth and seventeen for the defendant. Under instruction number 1, the jury were told:

"The Court instructs the jury that under the indictment in this case, if warranted by the evidence and under the other instructions in the case, you may find any one of the three following verdicts, to-wit: (1) Unlawful wounding, with intent to maim, disfigure, disable or kill; (2) Assault and battery; (3) Not guilty."

In another instruction the jury were advised as to the measure of pubishment for each offense. Numerous excep-

tions were taken as to the admissibility of certain evidence and to the granting and refusing of instructions. At the conclusion of the trial, the jury returned the following verdict:

"We, the jury, find the defendant guilty and fix his punishment at three (3) years in the penitentiary."

Upon motion of an attorney for the Commonwealth to amend the verdict, the court informed the jury that it was necessary for them to state in their verdict what they found the defendant guilty of. One juror replied: "Of felonious assault." Another juror said: "Unlawful wounding." The court then asked: "You found him guilty of unlawful wounding, with intent to maim, disfigure, disable or kill?" A juror replied: "That is the verdict we decided on."

Under the direction of the court, the verdict was amended to read as follows:

"We, the jury, find the defendant, Barron Lane, guilty of unlawfully wounding Archer G. Tate, with intent to maim, disfigure, disable or kill said Archer G. Tate, and fix his punishment by confinement in the penitentiary for a period of three years."

As amended the verdict was read aloud to the jury and the jury, without being severally polled, indicated their assent. It was then signed by the foreman, received by the court, and ordered to be recorded.

Thereupon, the accused moved the trial court to set aside the verdict and grant him a new trial. On December 27, 1948, the trial court overruled the motion, and entered judgment in accordance with the verdict. From this judgment defendant has appealed.

The defendant contends that the court erred (1) in overruling his plea of *autrefois acquit* and in allowing him to be tried for unlawful wounding, with intent to maim, disfigure, disable or kill Archer G. Tate rather than for a misdemeanor; (2) in giving instructions numbers 1, 2, 3, 4, 5 and 8-a, requested by the Commonwealth; (3) in refusing an instruction defining "intoxication"; (4) in refusing to permit

defendant to testify to the fact that Tate had brought a civil suit against him in the sum of $25,000; and (5) in refusing to sustain his motion to strike the evidence and set aside the verdict of the jury as contrary to the law and the evidence, and without evidence to support it.

The evidence in the first trial is not before us. The first assignment of error may be disposed of without reviewing the evidence in the second trial. The controlling question on this assignment is the effect of the verdict in the first trial, that is: Of what did the jury find the defendant guilty?

"Offenses are either felonies or misdemeanors. Such offenses as are punishable with death or confinement in the penitentiary are felonies; all other offenses are misdemeanors." Virginia Code, 1942 (Michie), section 4758.

■ To constitute a felony under Code, section 4402, the maiming must have been maliciously or unlawfully inflicted upon a person "with intent to maim, disfigure, disable, or kill." An assault and battery is a common law offense and punishable as a misdemeanor.

It is provided by statute in Virginia that if a verdict against an accused be set aside and a new trial granted him, "he shall not be tried for any higher offense than that of which he was convicted on the last trial." Virginia Code, 1942 (Michie), section 4918.

■ The same rule applies to a trial upon an indictment with one count that governs in a trial upon an indictment with several counts. If an accused is fairly acquitted of a higher offense included in the indictment, and, upon conviction of a lesser offense, applies for and obtains a new trial, he does not thereby waive the advantage of the acquittal of the higher offense thus obtained. The correction of error does not require him to surrender the great privilege embodied in the established maxim of our jurisprudence that: "No man can be twice put in jeopardy for the same offense." He is not, however, acquitted of the offense in respect to which he asks for a new trial. He may be tried

again for that offense with all its incidents and consequences. *Stuart* v. *Commonwealth*, 28 Gratt. (69 Va.) 950.

In this case the jury, on the first trial, found the defendant guilty of "unlawful wounding," merely. The verdict failed to name the person wounded, to recite that the wounding was done "with intent to maim," etc., or to state that it was committed "as charged in the indictment." It was not a complete finding in due form upon the issue presented and was silent on some of the material elements of the offense charged. It was fatally defective, and no valid judgment of the court could have been rendered upon it.

This has been the uniform holding of this court since the case of *Marshall* v. *Commonwealth*, 5 Gratt. (46 Va.) 663, decided in 1848. In that case the indictment contained two counts, the first for malicious stabbing and the second for unlawful stabbing. The jury found the defendant "not guilty under the first count of the indictment, but guilty of unlawful stabbing," fixed the term of confinement in the penitentiary at five years, and judgment was entered accordingly. The judgment was reversed upon the ground that the verdict was defective and a new trial directed to be had only on the second count.

In *Randall* v. *Commonwealth* (1874), 24 Gratt. (65 Va.) 644, on an indictment under the maiming statute, the jury found the defendant "guilty of malicious shooting," and fixed his term of imprisonment at five years, to which he was accordingly sentenced. On appeal it was held that "malicious shooting" merely, was not an offense, and the judgment was reversed and the case remanded for further proceedings.

In *Stuart* v. *Commonwealth, supra* (1877), under an indictment containing two counts charging the same offense, a malicious assault, with intent to maim, etc., the jury returned a verdict finding the defendant guilty of "unlawful assault," and fixed the term of his imprisonment in the State penitentiary at two years. On motion of the defendant, the

verdict was set aside and a new trial granted. Subsequently, the defendant was again indicted for the same offense, the second indictment being the same in every material point as the first. The defendant pleaded a former acquittal; but the court overruled his plea. Upon a second trial, he was found guilty of "*malicious* assault, with intent to maim, disfigure, disable or kill," and his punishment fixed at five years in the penitentiary. Upon appeal, it was held that the first verdict was properly set aside by the trial court, because "while it imposed the punishment prescribed for a felony (it) failed to find the intent necessary to constitute a felony." The court said: "It is, however, manifest that the jury intended to find, and have in effect found a verdict of acquittal upon so much of the indictment as charges a malicious assault. Upon that part of the finding a judgment of acquittal ought to have been entered, and the new trial confined to the allegation of an unlawful assault, with intent to maim, disfigure, disable and kill." The judgment of the court was reversed, the verdict of the jury set aside, and the case remanded for a new trial, with the defendant being subject to a conviction of no higher offense than that of "unlawful cutting, wounding, beating, with intent to maim, disfigure, disable, and kill, and sentenced to such term of imprisonment as is prescribed by the statute, in the discretion of the jury, whether the same shall or shall not exceed the period ascertained by the first verdict;" or to a "conviction of any lesser offense substantially charged in the indictment."

In *Jones* v. *Commonwealth* (1890), 87 Va. 63, 12 S. E. 226, on an indictment under the maiming statute, the jury found the accused guilty of "malicious assault," and fixed his sentence at five years in the penitentiary. Sentence was pronounced in accordance with the verdict. This court reversed the judgment on the ground that the verdict was defective, in that it failed to recite with what intent the assault was committed, and remanded the case for a new trial.

In *Williams* v. *Commonwealth* (1930), 153 Va. 987, 151 S. E. 151, on an indictment under Code, section 4402, the jury found the defendant guilty of "unlawful assault as charged in the indictment," and fixed his punishment at two years in the penitentiary. Judgment entered thereon was reversed because of the "defective verdict and illegal sentence." This court said it was "unable to determine from the verdict and this record whether the jury intended to find the accused guilty of a misdemeanor or a felony," yet he had been sentenced as though he had been found guilty of a felony by the jury. The case was remanded for such further proceedings as might be deemed appropriate.

In *Jones* v. *Commonwealth* (1946), 184 Va. 679, 36 S. E. (2d) 571, on an indictment under Code, section 4402, the jury found the accused guilty of "malicious assault," and fixed his punishment at eight years in the penitentiary. Citing the above cases in support, we held that we were unable to determine from the verdict whether the defendant had been found guilty of a felony or a misdemeanor and, therefore, reversed the judgment and remanded the case for a new trial.

■■ For the purpose employed in the statute, the words "shoot," "stab," "cut," or "wound," are analogous, and a verdict for "unlawful wounding," merely, is as defective as one for "unlawful shooting," or for "unlawful stabbing." Neither names a crime embraced under Virginia Code, section 4402.

In the case of *Johnson* v. *Commonwealth* (1923), 135 Va. 524, 115 S. E. 673, 30 A. L. R. 755, the circumstances were somewhat different. The indictment in that case charged that the defendant "unlawfully, feloniously and maliciously" shot and wounded one A. C. Holt, with intent to "unlawfully, feloniously and maliciously maim, disfigure, disable and kill" him. The verdict of the jury, upon which the court entered judgment, was as follows: "We, the jury, find the prisoner guilty, and fix his punishment at three years in the penitentiary."

Held, that the verdict being general was, read in connection with the indictment, good and sufficient. Said the court: "The indictment embraced a charge of malicious shooting with intent to kill. The verdict * * * , fixed the punishment which might lawfully have been prescribed either for a malicious shooting, with the intent aforesaid, or merely an unlawful shooting; but we must assume that the defendant has been convicted of the larger offense." *Lee* v. *Commonwealth*, 135 Va. 572, 115 S. E. 671.

In the present case, in consideration of the first verdict, we agree with Staples, Judge, in *Stuart* v. *Commonwealth*, *supra*, that it is "manifest that the jury intended to find, and have in effect found a verdict of acquittal upon so much of the indictment as charges a malicious assault. Upon that part of the finding a judgment of acquittal ought to have been entered, and the new trial confined to the allegation of an unlawful assault, with intent to maim, disfigure, disable and kill."

Here the first clause of the verdict found Lane guilty of an alleged offense not embraced in the statute under which he was being tried; the second clause fixed his punishment as though he had been found guilty of a felony. The fact that the jurors used the word "unlawful" instead of the word "malicious" clearly indicates that they found him not guilty of malicious intent. These considerations show that the jury intended to find the defendant guilty of unlawful assault, with intent to maim, etc., and to acquit him of the charge of malicious assault. It is equally clear that they did not find him guilty of a misdemeanor. We, therefore, hold that the trial court did not err in overruling the defendant's plea of former jeopardy and in allowing him to be tried upon the charge of unlawful assault, with intent to maim, etc.

This brings us to a consideration of the evidence in the second trial. In view of its length, it is impractical to set it out in detail. We must content ourselves with making a summary of material portions.

Barron Lane, 31 years old at the time of the offense alleged against him, had been a police officer in the town of Big Stone Gap for nearly three years. He, prior thereto, had been honorably discharged from the United States Army as a First Sergeant in a Military Police Platoon. Prior to his induction in the Army, he had seen service as a police officer.

Archer G. Tate, 29 years old, also held an honorable discharge from the Army of the United States, where he had served with a Chemical Warfare Division. His medical record indicates that he was discharged because of physical disability, arising from a "psychoneurotic condition, manifested by nervousness, restlessness and fainting spells."

Some months prior to September 19, 1947, Tate had been arrested by Lane for drunkenness, was convicted, and paid his fine. Some weeks prior to the above date, he had undertaken to taunt Lane with having served in the Military Police during the war, to which taunt Lane took no direct action.

On the evening of September 19, 1947, a football game was played in the stadium at Big Stone Gap. Tate had started drinking as soon as he quit work on the afternoon of that day. He attended the football game and thereafter proceeded with some friends along the streets of Big Stone Gap. He admits that he had taken four or five drinks of whiskey that evening; but denies that he was drunk when arrested shortly after ten p. m. by Lane. He remembers little that took place prior thereto. As to the actual occurrence, he made this statement:

" * * * when I walked across the street, why I stepped up on the walk to the other side, to the opposite side, stepped up on the curb and about the time I stepped up on the curb, why I felt somebody take hold of me, got hold of my arm, and I just turned around to see who it was and turned around and it was Barron, and when I turned around and saw who it was, why I just made—I just asked Barron, I said, 'Barron, am I giving you trouble?' He

said, 'God damn you, I'll give you trouble when I get you over to the Town Hall.' And that is the last thing I remember about it. He knocked me out."

One witness for the Commonwealth testified that Tate made no resistance to the arrest, and others stated that while Tate was being searched by Lane, Tate pulled his left arm back and when he did so, Lane reached for his club and hit him.

A large number of witnesses testified to the fact that Tate had been drinking and that it was obvious from his conduct and walk that he was under the influence of some intoxicant. Five or six bystanders stated that Tate had been told that he would likely be arrested if he did not get off the street and go home. They offered to take him home; but Tate refused to go with them.

Lane testified that he saw Tate and observed him acting as a drunken man. He also saw and heard the bystanders try to get him to go home; and when Tate refused to go and came staggering across the street to where he was standing, in the performance of his duty, he undertook to arrest him for violating the town ordinance for being drunk. He said that observing a bulge under the shirt of Tate, he started, as was customary, to search Tate for weapons. This is his description of what followed:

"I felt something under his shirt, on the left-hand side of his shirt. His shirt was kind of bloused, there was one or two buttons open in front and I had hold of his right arm with my left hand and I started to go in his shirt there to see what that was in there and just as I stuck my hand in his shirt, he took his left hand and knocked me loose, run his hand under there and then is when I hit him."

Lane testified that he hit Tate with a wooden police billy of the usual size and character carried by police officers; and that he took the billy from his hip pocket and only struck one blow. After the blow, he found inside Tate's shirt a four-fifth quart whiskey bottle with a small amount of whiskey in it. Tate did not appear to him to be badly

injured. Lane and his father, who came up immediately, had some difficulty putting handcuffs on Tate and subduing him. Lane said that when he struck Tate he thought that the latter had some weapon which he might use and he struck him quickly to prevent its use. He denied that he had any ill-feeling towards Tate.

It appears from the evidence that shortly prior to his arrest, Tate had had some verbal difficulty with another man named Harris, who was drunk. At that time some friends of Tate had persuaded him to surrender his pocket knife to them. Two tavern keepers testified that they had refused to sell Tate beer because of his intoxicated condition.

The principal conflict in the evidence relates to whether or not Tate was intoxicated to the point of drunkenness, and whether he was carrying the whiskey bottle in his hip pocket as he claimed, or under his shirt as claimed by Lane.

Upon complaint of Lane, a warrant charging Tate with being drunk and resisting an officer was promptly issued. Due to Tate's condition, his absence from the town, and to certain unexplained reasons, the mayor of the town of Big Stone Gap, the trying officer, stated that the warrant had not been served on Tate or a trial held.

The next assignments of error relate to the giving and refusing of certain instructions.

Instruction number 1 has already been herein set out. The objection to that instruction, and to numbers 2 and 4 were based almost entirely on the contention that the defendant, having been acquitted of a felony by the first verdict, could not again be tried except for a misdemeanor. In view of what we have already said, it is unnecessary to discuss instructions 1 and 2. We find no merit in the assignments with reference to instructions numbers 5 and 8-a..

Instruction number 3 reads as follows:

"The Court instructs the jury that a man is presumed to intend that which he does or which is the natural consequence of his act."

This instruction, in slightly different language, has

been approved in a number of cases by this court. Sometimes the phrase "immediate and necessary consequences" is used. *Johnson* v. *Commonwealth*, 188 Va. 848, 855, 51 S. E. (2d) 152. At other times the rule is expressed by the use of the phrase "natural and probable consequences of his voluntary acts." *Mealy* v. *Commonwealth*, 135 Va. 585, 591, 115 S. E. 528. The instruction, however, has not been approved as applied to a police officer in the discharge of his duties. A police officer, on duty, occupies a much different position from that of an ordinary individual. Often he must act quickly and effectively. Frequently he has little time for deliberation, and must use his best judgment, under the circumstances, as reasonably appears to him.

It is the duty of a police officer to arrest a person observed by him to be violating the law. In defending himself from attack by a person thus arrested, or attempted to be arrested, a police officer has the right to use such force as he may believe, and has reasonable ground to believe, necessary under the surrounding facts and circumstances to save himself from harm. The fact, much less the presumption, that he intends to disable such a person, under such circumstances, does not make him criminally liable for the consequences resulting from the force and means applied.

The bare statement of instruction number 3 was misleading and confusing in this case. It gave undue prominence to the consequences of the defendant's act without any qualification as to the rights of a police officer under the circumstances alleged by the defendant. It suggested to the jury implications unfavorable and prejudicial to the defendant. It was, therefore, improper under the law and the evidence in the case.

Instruction number 4 reads as follows:

"The Court instructs the jury that if they believe from the evidence in this case, beyond a reasonable doubt, that the defendant in this case, struck the said Archer G. Tate with a club, and inflicted with said club upon the said Archer G. Tate a wound, with intent, then and there, unlawfully

and feloniously to maim, disfigure, disable, or kill the said Archer G. Tate, then the jury should find the defendant guilty of unlawful wounding as charged in the indictment."

■ In addition to being subject to the objections above stated to instruction number 3, this is a finding instruction. It omits proper qualifications applicable to the defendant's situation and leaves out entirely the question of his defense.

The trial court refused to give the following instruction requested by the defendant:

"The Court instructs the jury that any person who has drunk enough ardent spirits to so affect his manner, disposition, speech, muscular movements, general appearance, or behavior as to be apparent to observation shall be deemed to be intoxicated."

■ We do not think the court erred in refusing to give this instruction. Tate was charged with being drunk. What constitutes "drunkenness" or "intoxication" is a term which is given a very broad meaning in its every day application. It is a matter of opinion, depending upon the viewpoint of the individual. It seems to be expressive of that state or condition which follows from taking excessive quantities of an intoxicant. "To some persons it means being under the influence of an intoxicant to such an extent as to render one helpless, while others consider a person intoxicated when he is only slightly under such influence." 30 Am. Jur., Intoxicating Liquors, section 4, page 254; 28 C. J. S. page 538.

■ Several witnesses for the Commonwealth testified that Tate did not appear to them to be drunk; a greater number of witnesses for the defendant testified that he was drunk. In view of their testimony and the description of Tate's behavior, movements and admissions, the jury should have been able to determine whether or not Lane was reasonably justified in believing that Tate was, in fact, drunk. It was not what some one person might have believed as to Tate's condition, but what Lane, at the time, believed and had reasonable ground to believe. The trial court did not err in refusing to give the instruction in the form requested.

The twenty-six instructions granted in this case were too many. A number of them were repetitious. Their multi-plicity was more likely to confuse than to enlighten the jury. Time after time we have condemned this practice. *Savage* v. *Nute*, 180 Va. 394, 404, 23 S. E. (2d) 133; *McDaniel* v. *Commonwealth*, 183 Va. 481, 492, 32 S. E. (2d) 667.

The last assignment of error relates to the refusal of the court to permit Lane to testify that Tate had brought a civil suit against him for the sum of $25,000.

It appears that there was no indictment in this case until several months after the alleged offense took place. It is obvious that some ill-feeling developed. A conviction in this case may have been thought favorable to a successful prosecution of the civil action, notwithstanding the differ-ences between the two procedures. For that reason, the evidence ought to have been admitted, purely on the ques-tion of the temper, bias, feeling or intent of Tate, the chief prosecuting witness for the Commonwealth, in obtaining a conviction of Lane. *Wadley* v. *Commonwealth*, 98 Va. 803, 809, 35 S. E. 452; *State* v. *Lawson*, 128 W. Va. 136, 36 S. E. (2d) 26.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for a new trial, in accordance with the views herein expressed, if the Commonwealth deems a new trial necessary and proper.

*Reversed and remanded.*