Richmond

## WILLIAM P. RYAN

v.

## COMMONWEALTH OF VIRGINIA

October 6, 1978.

Record No. 771589.

Present: All the Justices.

*Richard S. McLellon (Bangel, Bangel & Bangel,* on brief) for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief) for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

In this case the first three counts of the indictment charged William P. Ryan with (1) breaking and entering the dwelling of Pamela E. V. . . . [1] in the nighttime with intent to commit rape, (2)

---

[1] Last name deleted by the Court.

carnally knowing Pamela E. V. . . . with his mouth,[2] and (3) attempted rape of Pamela E. V. . . . , all on October 9, 1976. The fourth count charged Ryan with breaking and entering the same dwelling on October 12, 1976, in the nighttime, with intent to commit rape and larceny. In a jury trial on the first three counts Ryan was found guilty as charged and his punishment was fixed at confinement in the State penitentiary for 10, 5, and 10 years, respectively. The trial court entered judgment on the verdict. Subsequently, another jury found Ryan guilty under the fourth count and fixed his punishment at confinement in the penitentiary for 20 years, on which verdict the trial court entered judgment.

In the first trial, Pamela E. V. . . . (Mrs. V.) testified that between 6:00 and 6:30 a.m. on October 9, 1976, she suddenly awakened to find a strange man lying beside her in bed. She saw the man face to face. It was light enough for her to see around the room. She screamed, and the intruder, whom she identified at trial as Ryan, threw her down on the bed, put his hand over her mouth, and threatened that if she screamed again an accomplice might harm her children. Mrs. V. resided in the dwelling with her four children, from two to seven years of age, while her husband was "in the Mediterranean." The youngest child, who was in bed with her, woke up and began to fret until Mrs. V., as ordered by Ryan, quieted him. Ryan then attempted numerous times without success to have sexual intercourse with Mrs. V.. Upon finding himself physically incapable of accomplishing this purpose, he rubbed his penis around her vaginal area, fondled her breasts and "took his tongue and . . . started down around the vagina with his tongue", licking her vagina. The episode lasted approximately forty-five minutes, but Mrs. V. estimated that Ryan was in the house for an

---

[2] Code § 18.2-361 provides:

"**Crimes against nature.** — If any person shall carnally know in any manner any brute animal, or carnally know any male or female person by the anus or by or with the mouth, or voluntarily submit to such carnal knowledge, he or she shall be guilty of a Class 6 felony.

"If any person shall by force carnally know any male or female person by the anus or by or with the mouth he or she shall be guilty of a Class 4 felony."*

Although the act for which Ryan was convicted was cunnilingus, at trial opposing counsel and the trial court referred to it as sodomy. *See Black's Law Dictionary*, 456, 1563 (4th ed. 1951).

* The offense was changed to a Class 3 felony by Acts 1977, c. 285.

hour and a half or longer. Before leaving he tied Mrs. V. with some of her husband's belts, warned her not to call the police, and said that he was coming back.

With the assistance of her children, Mrs. V. managed to free herself. She promptly called the police, reported the facts, and gave them a description of her assailant. Because of Ryan's threat to return, Mrs. V. temporarily left the house with her children on October 9 to stay with friends, and returned only after Ryan's arrest on October 12.

During the trial, Ryan's counsel attempted to show, in cross-examination of Mrs. V., that she had made a civil claim against Ryan's employer, Bob Jones Realty Company, for Ryan's action, which might affect her credibility as a witness by showing bias or motivation in her role as the key prosecuting witness. Upon objection by the Commonwealth's Attorney, this evidence was ruled inadmissible. Outside the presence of the jury, it was revealed that Mrs. V. had made such a claim and that it had been settled, but the details of the settlement are not disclosed in the record.

As proof that the breaking and entering occurred in the night-time, the Commonwealth proffered in evidence a local newspaper time and tide chart published on October 9, 1976, which showed the time of sunrise on the following day to be 7:08 a.m. When Ryan objected on the grounds that this evidence violated the hearsay rule and that the chart had been prepared several hours prior to the date of the offense, the trial judge, taking "judicial notice" that he followed the newspaper's chart every day and found it "very accurate", overruled the objection.

At the conclusion of the Commonwealth's evidence, Ryan moved to strike the evidence as insufficient to prove a prima facie case. The motion was overruled, and Ryan adduced no evidence in his behalf. After the jury returned a verdict of guilty on all three counts, Ryan moved to set aside the verdict, but argued only that the "sodomy charge" required evidence of penetration and that the Commonwealth's evidence failed to establish this fact. Stating that the jury had determined that there had been penetration, the trial court overruled the motion.

Before the separate trial on the fourth count of the indictment, Ryan's motion to exclude any evidence as to the October 9th offenses was overruled. At trial, the motion was renewed and again denied.

At this second trial, Mrs. V. recounted the events which occurred on October 9, and her testimony was substantially the same as that given by her in the earlier trial. She was more specific, however, in her testimony as to Ryan's threat to return, quoting him as saying, "I'm going to come back. I can't succeed; and I'm going to come back, and I'm going to succeed". She testified that a camera which she had borrowed from a friend was lying on her dresser when she left the house on October 9. A picture of the friend's daughter was in the camera case.

Police officers testified that they were in the vicinity of Mrs. V.'s residence on October 12, 1976, at 2:00 a.m. when they observed a light in the house and a station wagon, with lights on and motor running, parked in the yard. Aware of the October 9th crimes, they stopped, approached the dwelling, and found Ryan inside. The officers, recognizing him as a suspect, arrested Ryan and advised him of his *Miranda* rights before asking him to explain his presence in the house. Ryan stated that he was there for the purpose of making repairs under instructions from his employer, Bob Jones Realty Company. Ryan had in his possession a key to the front door. However, he had no tools in the house, the officers saw no evidence of any repair work in progress, and Ryan was unable to show them any. The officers observed that a television set had been unplugged and pulled away from the wall. In the station wagon the officers found a camera case containing a camera and a picture of a little girl. Ryan insisted that the camera was his, but he was unable to identify the girl in the picture. The camera and picture were introduced into evidence and identified by Mrs. V. as the property of her friend.

At the conclusion of Commonwealth's case, Ryan's motion to strike the evidence on the ground that the intent to commit rape had not been established was overruled. Ryan then adduced evidence to show that he and other workmen had been directed by Bob Jones Realty Company to make certain repairs to the residence, that his employer had given Ryan a key to the front door

before the house was occupied by Mrs. V. and her children, and that he and a fellow workman went to the house twice on the night before Ryan was arrested to complete their work, but left without entering when they saw no lights in the house.

The trial court granted Instruction No. E, tendered by Ryan, which read as follows:

> "The Court instructs the jury that the fact that the defendant may have committed a prior criminal offense is not proof that he is guilty of the offense here charged, and such fact shall not be considered by the jury in reaching a conclusion as to his guilt or innocence on the present charge."

After the jury had retired to consider the evidence, the jurors inquired whether they could consider the testimony of Mrs. V. "as to the attempted rape on October 9, 1976, in reaching the conclusion that the defendant is guilty of breaking and entering with intent to commit rape on October 12, 1976". The trial court replied, "Yes; you can consider her testimony today, in reaching your conclusion, as well as all the evidence". No objection to this answer is found in the record except in argument by Ryan's counsel on the motion to set aside the jury verdict finding Ryan guilty and fixing his punishment. The motion was overruled.

■ Ryan argues that his conviction of violating Code § 18.2-361 should be reversed because there was no evidence that his mouth penetrated Mrs. V.'s vagina. It is true, as Ryan says, that we have held that penetration is an essential element of the crime of sodomy and that evidence that a boy's mouth was merely placed on a man's genitals was insufficient to show penetration. *Ashby* v. *Commonwealth*, 208 Va. 443, 444, 158 S.E.2d 657, 658 (1968), *cert. denied*, 393 U.S. 1111 (1969). However, it is also true that the issue of penetration is a question for the jury upon the evidence in the case and that the penetration that must be shown need be only slight. *Rowland* v. *Commonwealth*, 147 Va. 636, 639, 136 S.E. 564, 565 (1927). The trial court ruled that the jury verdict established that there had been penetration by Ryan's mouth. We cannot say that this conclusion is wrong as a matter of law. From the victim's account of Ryan's protracted assault upon her, extending over a

period of at least forty-five minutes, it could reasonably be inferred that penetration had occurred.

Ryan cites *State* v. *Olsen*, 42 Wash.2d 733, 258 P.2d 810 (1953), in which it was held that the touching of the female sexual organ with the mouth was insufficient to support a conviction of carnally knowing the female, because there was no evidence of penetration. However, in *Commonwealth* v. *Hornberger*, 199 Pa. Super. Ct. 174, 184 A.2d 276 (1962), testimony of the prosecutrix that the defendant "put his mouth on her vagina" was held to be sufficient to show penetration. Here, there was evidence that Ryan did more than merely put his mouth on Mrs. V.'s vagina. He pursued a more active course of abuse which the jury could reasonably infer could not have been accomplished without penetration. "As in rape, penetration in sodomy can be proved by circumstantial evidence. 'Evidence of the condition, position, and proximity of the parties . . . may afford sufficient evidence of penetration to support a charge of sodomy by cunnilingus . . . . ' " *State* v. *Pettijohn*, 541 S.W.2d 74, 79 (Mo. App. 1976) (citations omitted). Consequently, we reject Ryan's argument that the trial court erred in failing to strike the Commonwealth's evidence as to carnal knowledge by mouth.

Ryan has assigned error to the action of the trial court in admitting into evidence the newspaper time and tide chart to establish sunrise and in taking judicial notice of the accuracy of the chart. The grounds of Ryan's objection to the introduction of the chart were that it violated the rule against hearsay evidence and that it had been prepared some hours prior to the date of the offense. Despite Ryan's objections, the trial court took judicial notice of the accuracy of such charts and admitted it into evidence. It showed the time of sunrise on October 10 rather than the correct date of October 9.

We construe the action of the court in taking judicial notice of the accuracy of the time and tide chart as equivalent to taking judicial notice that sunrise on October 10, 1976, was at approximately the time shown on the chart. Courts may take judicial notice of generally known or easily ascertainable facts. *Williams* v. *Commonwealth*, 190 Va. 280, 56 S.E.2d 537 (1949); McCormick, Evidence, § 330 (2d ed. 1972). Thus, courts may take judicial notice of the time of sunrise and sunset, and evidence in the form of an

almanac or other writing may be introduced into evidence to refresh the mind of the court. *Toole* v. *Salter*, 249 S.C. 354, 154 S.E.2d 434 (1967); *Fields* v. *Jackson*, 102 Ga. App. 117, 115 S.E.2d 877 (1960).

If there had been any queston as to the accuracy of the information in the chart, certain verification could have been provided. Ryan could have offered evidence disputing the accuracy of the time and tide chart, but no such offer of evidence was ever made. It is a matter of common knowledge that there would be a difference of only a few minutes between the time of sunrise on October 9 and the time of sunrise on the following day. The taking of judicial notice is generally within the discretion of the trial court. *Randall* v. *Commonwealth*, 183 Va. 182, 186, 31 S.E.2d 571, 572 (1944). Finding no abuse of discretion in this instance, we hold that the trial court committed no reversible error in admitting the chart and taking judicial notice of its accuracy.

■ Ryan asserts on appeal that there was no evidence that his entry into the V. dwelling occurred during the nighttime as charged in the indictment. This issue was not raised in the court below with reasonable specificity and we will not now permit it to be asserted for the first time before us. Va. Sup. Ct. R. 5:21. As the case was tried below, the issue whether there was a breaking and entering in the nighttime was presented to the jury. There was evidence that Ryan broke and entered possibly as early as 6:00 a.m. on October 9, and that sunrise on the following morning was at 7:08 a.m. Hence there was evidence from which the jury could have found that Ryan had entered the dwelling during the nighttime.

■ Counsel next argues that the trial court erred in excluding evidence that the complaining witness, Mrs. V., had made a civil claim against Ryan's employer for damages for the injuries resulting from Ryan's acts against her. He relies upon *Lane* v. *Commonwealth*, 190 Va. 58, 55 S.E.2d 450 (1949), in which we held that the trial court erred in refusing to admit evidence in a criminal trial that the complaining witness had instituted a civil action against the accused. But the basis for our holding in *Lane* was that a conviction in the criminal case "may have been thought favorable to a successful prosecution of the civil action". *Id.* at 75,

55 S.E.2d at 458. In the present case, the civil claim had been made, not against Ryan, but against his employer, and it had been settled. Therefore, the reason for the admissibility of such evidence in *Lane* to show that the testimony of the witness might have been tainted by bias is not here present. Mrs. V. had nothing to gain in her civil claim from lying in the criminal cases. Moreover, evidence that a claim had been made and settled for the acts allegedly committed by Ryan against Mrs. V. might have been extremely damaging to Ryan. We hold that the trial court, weighing the potential effect of this evidence, did not err in excluding it.

■ There is no merit in counsel's contention that the trial court erred in admitting evidence of the events of October 9 in the trial of Ryan on the charge of breaking and entering Mrs. V.'s residence again on October 12. Evidence of other offenses is admissible if it shows the conduct and feeling of the defendant toward his alleged victim, if it establishes prior relations between the parties, or if it tends to prove any relevant element of the offense charged. *Gibson v. Commonwealth*, 216 Va. 412, 415, 219 S.E.2d 845, 848 (1975), *cert. denied*, 425 U.S. 994 (1976). Here, evidence of the events of October 9 was admissible to show Ryan's conduct and feeling toward Mrs. V., and his intent to return for the purpose of completing the rape which Mrs. V. testified he attempted on the earlier date and vowed that he would come back and consummate. *See Kirkpatrick v. Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).

■ Counsel finally argues that the trial court committed reversible error in the second trial in its answer to the jury's inquiry whether it could consider Mrs. V.'s testimony as to the earlier attempted rape. No objection was made to the answer given by the trial court until argument by Ryan's counsel on the motion to set aside the verdict. Thus, the objection came too late for any error to be corrected by the trial court, and for the error, if any, to constitute reversible error. Va. Sup. Ct. R. 5:21.

For the reasons assigned, we hold that there is no reversible error in the judgments of conviction and the same will be affirmed.

*Affirmed.*