COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Friedman and Callins
Argued by teleconference


RAYMOND R. KILBURN
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1349-21-2                       DOMINIQUE A. CALLINS
                                                        DECEMBER 13, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Michael J. Hallahan, II, for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


        A jury convicted Raymond R. Kilburn of aggravated sexual battery and forcible sodomy.

He challenges only the sodomy conviction, asserting that the evidence failed to prove penetration.

For the following reasons, we affirm the trial court's judgment.

                                    BACKGROUND

        On appeal, we recite the facts in the "'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting

*Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).  Doing so requires us to "discard the evidence

of the accused in conflict with that of the Commonwealth, and regard as true all the credible

evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.*

(quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On November 12, 2020, Kilburn's stepdaughter left her two children, twelve-year-old J.C. and six-year-old M.D., with Kilburn at the home he shared with the children's grandmother. Kilburn had watched the children "multiple times" before. After their mother set up the children's computers for remote learning, she returned to her home.

Approximately two hours later, J.C. texted his mother: "HELP. [CRYING EMOJI]. PAPA IS DOING SOM[E]THING TO [M.D.]." When she asked her son what he meant, he replied, "HE[] TOLD HER TO BE HES [sic] LITTLE B WORD I HEAR HER CRUING [sic] IM SCARED." At trial, J.C. testified that he texted his mother after he saw Kilburn take M.D. into his bedroom and close the door. He stated that when he heard M.D. "whining" and "crying," he approached the closed door to investigate. Listening outside the door, J.C. heard Kilburn say, "I'll give you candy if you'll be my little bitch."

Upon receiving J.C.'s text, his mother called him and he returned her call using "Facetime." She recorded their video call. M.D. joined J.C. during the call and told her mother that Kilburn "was licking [her] butt." The children's mother then texted her own mother, the children's grandmother, and told her to return home immediately. She remained on the Facetime call with her children until their grandmother arrived and took the children to the police station. After speaking with a detective, the grandmother drove M.D. to a hospital.

At the hospital, M.D. underwent a forensic examination. Forensic nurse examiner Megan Pond swabbed M.D.'s mouth, her inner thighs, her external genitalia, her anal area, her perianal area, and her buttocks. Pond explained that the perianal area was the strip of skin between the vagina and the anus. She also noted that she sampled the anus area separately from the perianal area and the "buttocks" area. When Pond was asked how she performed M.D.'s anal swabbing, she demonstrated with her fingers, "creat[ing] a hole and then t[a]k[ing] her other finger and scrap[ing] . . . inside of the interior of that hole." When asked if she "st[u]ck" the five-to-twelve-

inch swab "inside" the anus, she answered that she swabbed only "the exterior of the anal opening" due to M.D.'s young age.

The samples were submitted to forensic scientist Angie Rainey for DNA analysis. Rainey identified male DNA on the interior crotch of M.D.'s underwear, her perianal/buttocks area, her "anorectal" area, and her exterior genitals/thighs. Rainey explained that the "anorectal" area referred to the samples typically taken from inside the victim's anus. Kilburn could not be eliminated as a contributor of the male DNA material on the underwear, the anorectal area, or the external genitals/thighs. With respect to the DNA material on the underwear and anorectal samples, the chances of the DNA belonging to a Caucasian male other than Kilburn were 1 in 2,800. With respect to the DNA material on the external genitals/thighs sample, the chances of the DNA belonging to a Caucasian male other than Kilburn were 1 in 64. The perianal/buttocks sample also contained male DNA material, but too little DNA was collected to reach a conclusive finding.

M.D. testified that she followed Kilburn into his bedroom and, after shutting the door, he asked her if she wanted to watch television. Kilburn turned on a cartoon and told M.D. he would "give [her] a massage." He removed her pants and underwear and began "touching [her] butt and [her] pee pee." She stated that he touched her "pee pee" and her "butt" with his hands and that he "was licking [her] butt." M.D. marked her "front" genital area on an anatomical diagram as her "pee pee" and her rear genital area as her "butt." She explained that he was licking the "[hole] [w]here I poop," and marked a small area between her buttocks. M.D. testified that she told Kilburn to stop and began "whining." Kilburn placed his hand over her mouth to quiet her. When asked on direct examination, without objection, if Kilburn's "mouth and tongue was [sic] in [her] butt," she responded, "Yes." On redirect, over Kilburn's objection, M.D. again confirmed that Kilburn "st[u]ck his tongue in [her] butt where [she] poop[ed]."

M.D. admitted that, when she was interviewed several days after the incident, she did not disclose that Kilburn had licked her. She told the interviewer that Kilburn had removed her pants and underwear, massaged her, and "started messing with her private parts" with his hands. At trial, M.D. explained that she did not mention Kilburn was "licking [her] butt" because she was embarrassed. She acknowledged that she spoke with her mother before trial about her testimony and that her mother reminded her to include the details she had omitted during the interview. However, she denied that her mother had dictated her testimony.

Kilburn testified on his own behalf. He stated that he worked outside in the greenhouse for approximately an hour after the children's mother left. He then went inside, prepared M.D.'s lunch, and used the bathroom. Kilburn stated that working outside made him "hot and sweaty" and that, shortly after he sat on the toilet, M.D. used the bathroom alone. Kilburn speculated that M.D. had to use her hands to climb onto his adult sized toilet and that his DNA was deposited on her buttocks when she slid across the toilet and/or touched the toilet paper roll that he had recently used. He also stated that he took M.D. into his bedroom to watch cartoons because she was "bothering" J.C. as he tried to complete his schoolwork. Kilburn testified that he gave M.D. candy before they entered the bedroom. He then left the bedroom to check on J.C. and when he returned to the bedroom, M.D. announced that she wanted to paint. He maintained that M.D. began whining when he told her that she had to finish her schoolwork and wait for her grandmother's return before she could paint. Kilburn stated that, when M.D. insisted on painting, he told her to "stop being a sassy bitch." M.D., who had candy in her mouth, opened her mouth and drooled. When Kilburn reprimanded her and threatened to spank her, M.D. dropped her pants and underwear, "shook her butt," and laughingly proclaimed, "Booty Bongo." Kilburn pulled up her underwear and pants and told her she was "in trouble." He denied touching M.D. inappropriately or licking her.

At the conclusion of the evidence, the jury convicted Kilburn of aggravated sexual battery and forcible sodomy. Kilburn moved to set aside the forcible sodomy conviction, asserting that the evidence had failed to prove that his tongue penetrated M.D.'s anus. He emphasized the inconsistencies in M.D.'s accounts and stressed that Pond testified that she swabbed the exterior of M.D.'s anal opening. The trial court denied the motion. It cited M.D.'s testimony that Kilburn's tongue was "in" her anus and Pond's demonstration that she collected the DNA on the anorectal sample from inside the anal opening. Kilburn appeals.

ANALYSIS

Kilburn asserts that the evidence was insufficient to prove forcible sodomy because it did not prove that his tongue penetrated M.D.'s anus. He emphasizes that M.D. did not initially tell interviewers that he licked her, and he alleges that her mother coached her testimony. He argues that M.D. testified that his tongue was "on" her anus and that only in response to leading questions did she agree that his tongue was "in" her anus. Although Kilburn does not assign error to the trial court's evidentiary rulings, he maintains that the trial court erred when it allowed the Commonwealth to elicit testimony during M.D.'s redirect examination that his tongue was "in" her anus. He asserts, "[i]n addition to the Commonwealth trying to make the victim say that [his] tongue was in her butt," the Commonwealth mischaracterized Pond's testimony by eliciting Rainey's testimony that anorectal samples were typically taken from inside the anal opening.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.*

- 5 -

(alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"[P]enetration is an essential element of the crime of sodomy." *Horton v. Commonwealth*, 255 Va. 606, 612 (1998) (quoting *Ryan v. Commonwealth*, 219 Va. 439, 444 (1978)). "However, penetration in sodomy, as in rape, can be proved by circumstantial evidence, and the penetration 'need be only slight.'" *Id.* "Evidence of the condition, position, and proximity of the parties . . . may afford sufficient evidence of penetration to support a charge of sodomy . . . ." *Ryan*, 219 Va. at 445 (citation omitted).

Although Kilburn disputes that M.D. testified during her direct examination that his tongue penetrated her anal opening, the record does not support his argument. The Commonwealth asked M.D. during her direct examination:

> [COMMONWEALTH]: So, is it true then, that he was licking your butt, rather than just using his hands, is that true?
>
> A: Yes.
>
> Q: Okay, and you said [ ] he was using his mouth and his tongue. Was it in your butt?
>
> A: Yes.
>
> Q: It was in your butt?
>
> THE COURT: Her answer was, yes.
>
> Q: Okay.
>
> THE COURT: For the record.

On redirect, the Commonwealth asked M.D. if Kilburn "st[u]ck his tongue in [her] butt where [she] poop[ed]."[1]  She responded, "Yes."

Further, we find no merit in Kilburn's assertion that M.D.'s testimony was not credible because her mother had coached her or because she did not disclose in her initial interview that Kilburn had licked her or touched her genital area with his tongue.  "[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination."  *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)).  "The mere fact that a witness may have . . . given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief."  *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006).  Rather, the inconsistency is a "circumstance . . . appropriately weighed as part of the entire issue of witness credibility," an issue for the fact finder to resolve.  *Id.*  Here, M.D. told her mother immediately after the incident during their recorded Facetime call that Kilburn "was licking [her] butt."  As the seven year old was embarrassed about this detail, mother talked with M.D. before trial and urged her to remember to share it during her testimony. M.D. also testified that her mother had encouraged her to tell the truth.

Finally, it is well-established that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim."  *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005).  Nevertheless, M.D.'s testimony was corroborated in several respects.  As Kilburn has not challenged his aggravated sexual battery conviction, that conviction is now the

---

[1] Kilburn did not object to the leading nature of the Commonwealth's questions and does not contest the admission of M.D.'s testimony on appeal.  When Kilburn objected that the Commonwealth had mischaracterized M.D.'s earlier testimony, the trial court disagreed, stating the Commonwealth had asked previously, "Did he put his tongue inside your butt," and M.D. answered, "Yes."  The trial court stressed, "He definitely did, because the Court was listening for it."  Kilburn effectively withdrew his objection, stating, "Okay."

law of the case. *See Neff v. Commonwealth*, 63 Va. App. 413, 416 (2014). Thus, the evidence before us is undisputed that Kilburn touched M.D.'s bare genitals while they were alone together in the bedroom.

Further, J.C. testified that he overheard M.D. whining and crying, followed by Kilburn offering her candy in exchange for her being "[his] little bitch." Immediately after the incident, M.D.'s mother asked M.D. what had happened and M.D. told her mother that Kilburn had "licked" her "butt." Although Pond denied that she inserted the five-to-twelve-inch swab "inside" M.D.'s anus, the trial court's description of Pond's demonstration was that she used her fingers to create "a hole and then" used "her other finger" to "scrap[e] . . . inside of the interior of that hole," evidence permitting a rational finding that the swab *slightly* entered the anus.[2] That finding was consistent with Rainey's testimony that anorectal samples customarily were taken from the interior of the anus. The DNA material on the anorectal sample matched Kilburn's, as did the DNA material on the interior crotch of M.D.'s underwear and her external genitals/thigh area.

Finally, although Kilburn denied that he licked M.D. and speculated that his DNA transferred to M.D. from the toilet seat, the jury was entitled to reject his self-serving testimony

---

[2] Pond testified that she swabbed "the exterior of the anal opening" and, for a patient M.D.'s age, "never put[s] anything inside [a body cavity]." However, based on her demonstration for the jury showing how she swabbed the anal opening, the trial court found that the demonstration "may give the impression that she didn't go very far into the anus, but did, in fact, make slight penetration." Whether the penetration required for forcible sodomy occurred is a factual finding that is entitled to deference unless plainly wrong or without evidence to support it. *See Ryan*, 219 Va. at 444 (stating that penetration is a factual finding); *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (stating the standard of review for factual findings). At oral argument on this appeal, Kilburn urged that, as Pond's oral testimony contradicted her visual demonstration, the trial court's finding was plainly wrong. The trial court was able to view Pond's demonstration, and it found that Pond's demonstration indicated "slight penetration." The demonstration was part of her testimony, and the trial court was entitled to weigh and resolve the inconsistencies of Pond's entire witness presentation. *See Juniper*, 271 Va. at 415. It was not plainly wrong for the trial court to credit Pond's presentation over her oral testimony, and we will not disturb that finding on appeal.

and to conclude that he was lying to conceal his guilt. *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). Viewed as a whole, the evidence was sufficient for a rational fact finder to conclude that Kilburn penetrated M.D.'s anus with his tongue and to find him guilty of forcible sodomy.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.