Present:  All the Justices

THOMAS E. HORTON, SR.

v.  Record No.  971645

COMMONWEALTH OF VIRGINIA

OPINION BY JUSTICE CYNTHIA D. KINSER
April 17, 1998

GEORGE R. NEWBY, JR.

v.  Record No.  971576

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In these cases, we decide whether there is sufficient evidence of penetration to support the defendants' convictions of forcible sodomy by engaging in cunnilingus in violation of Code § 18.2-67.1.  Because the evidence in each case proves that the respective defendant penetrated the outer portion of his victim's genitalia, we will affirm the convictions.

I. STANDARD OF REVIEW

The applicable standard of review is as follows:

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom.  We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

<u>Higginbotham v. Commonwealth</u>, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); <u>see also</u> Code § 8.01-680.  Thus, we will present the facts of each case in the light most favorable to the Commonwealth.

II.  FACTS

<u>Horton v. Commonwealth</u>

On February 6, 1996, H.H.,[1] age 12, was asleep in her bedroom.  She was alone in the house because her parents were at work.  At approximately 1:48 a.m., H.H. awoke to find someone standing at the door of her bedroom. Initially, H.H. thought it was her father, but she realized it was not when she looked at her clock and saw the time. H.H. testified that as the man approached her, she could see that he was wearing what she described as a "hunting mask" which left his eyes, nose and mouth uncovered.  When the man came closer to her, H.H. started kicking and screaming, and the man sprayed something in her eyes or face that burned.  When the man realized that she could still see, he sprayed her again.  However, before spraying her the second time, he had removed his mask, and H.H. recognized the man as Thomas E. Horton, Sr., her neighbor.

---

[1] Full name deleted by the Court.

Even before seeing his face, H.H. had recognized Horton's voice.

Horton then handcuffed H.H.'s wrists together, pulled down her purple jogging shorts, pulled up her shirt, and got on top of her.  Horton had also pulled down his pants. Asserting that she knew the words for the parts of the body because of a Family Life course she took at school, H.H. said she felt his penis on the inside of her leg and described how Horton spread her legs apart, pulled up her shirt, and "licked [her] boobs."  When asked if Horton tried to do anything else, H.H. stated that he tried "[to] get his penis in my vagina," but he was unable to do so. H.H. then testified as follows:

Q.  Did he do anything else to your vagina?

A.  He licked it.

Q.  He licked it?

A.  Yes.

Q.  With his tongue?

A.  Yes.

When H.H. told Horton she needed to go to the bathroom, he removed the handcuffs and allowed her to go. However, Horton accompanied her to the bathroom and forced her to wash.  H.H. testified that upon their return to the bedroom, Horton threatened to kill her if she told her

3

parents.  He finally departed around 2:30 a.m.  H.H. did not telephone the 911 emergency number for help because she was afraid that Horton had remained somewhere on the premises.  H.H. told her parents about the incident when they returned home at approximately 5:00 a.m.  The police were notified shortly thereafter.

A.C. Powers of the Augusta County Sheriff's Department investigated the incident.  He recovered an empty condom pack and a condom wrapper on the floor of H.H.'s bedroom. Since H.H. identified her assailant as Horton, Powers went to Horton's residence.  He subsequently searched Horton's truck and residence where he found a mask matching the one described by H.H., handcuffs, a canister of pepper spray, and two unused condoms.

At trial, Horton moved to strike the Commonwealth's evidence on the basis that there was insufficient proof of penetration to support the sodomy charge.  He renewed this motion at the close of all the evidence.  The trial court overruled the motions, and the jury found Horton guilty of forcible sodomy.[2]

---

[2] The jury also convicted Horton of breaking and entering, attempted rape, and wearing a mask.  These convictions are not before the Court on this appeal.

4

On October 29, 1996, the trial court denied Horton's motion to set aside the verdict and entered judgment on the jury's verdict. Horton then filed a petition for appeal in the Court of Appeals of Virginia, which both a single judge and a three-judge panel denied. Horton appeals.

<u>Newby v. Commonwealth</u>

The victim in this case, D.C.,[3] began a new job as a waitress/bartender at a restaurant in Chesterfield County on March 13, 1995. During that evening, she noticed George R. Newby, Jr., in the restaurant because he made several remarks to her about her marriage and appearance. When a co-worker announced that it was closing time, the remaining customers, including Newby, exited the restaurant. While D.C. cleaned up, the co-worker attempted to lock the door but had difficulty with the lock. Newby then re-entered the restaurant on the pretext of helping with the lock and remained until D.C. and the co-worker left. As D.C. walked to her car, Newby asked her if she would give him a ride home, and she agreed.

Newby directed D.C. where to drive, and she eventually arrived in front of a building that Newby described as "his club." D.C. testified that Newby then brought his left arm

---

[3] Full name deleted by the Court.

5

around her neck and started squeezing her.  She honked her horn, but Newby told her to take her hand off the horn or he would kill her.  D.C. testified that Newby held something with a sharp blade across her nose.

Then, according to D.C., Newby forced her from the car and pulled her in the direction of some woods adjacent to the building.  Newby forced D.C. to remove her clothes and lie flat on her back.  He then "put his penis in [her] vagina."  Because her vaginal area was dry and unlubricated, Newby pulled his penis out of her vagina.  D.C. testified that Newby next "put his mouth on my vaginal area and he drooled and I know this because it was so cold, I could feel the heat . . . ."  When asked if Newby's mouth was specifically on her vaginal area, D.C. replied that he was "on my vulva area."  D.C. further testified that Newby put his penis back in her vagina and that he put his mouth on her genitalia at least twice.

Newby forced D.C. to engage in sexually explicit conversation with him, and he eventually ejaculated inside her.  Newby then returned D.C.'s clothes to her but threatened that he would kill her and her children if she told anybody about what he had done.  According to D.C., Newby said, "This isn't the first time that I raped and you better not be the first one to tell."  Newby allowed D.C.

6

to get dressed and return to her car, but she drove her car into a ditch.  Newby tried unsuccessfully to help D.C. remove the car from the ditch.  D.C. eventually walked to a gas station where she telephoned a friend.  The friend and the police arrived shortly thereafter.

At trial, Newby's defense was that D.C. consented to the sexual activity.  In support of his defense, Newby testified, "I did lick Mrs. [C.'s] vaginal area and I did penetrate her with my penis and have sex, but at no time did she say, 'No,' did she say 'Stop,' or anything."

At the conclusion of the Commonwealth's evidence and at the close of all the evidence, Newby moved to strike the evidence on the basis that the Commonwealth had failed to prove penetration on the sodomy charge.  The trial court overruled both motions.  The jury convicted Newby of forcible sodomy.[4]

The Court of Appeals of Virginia awarded Newby an appeal and affirmed his conviction of forcible sodomy in an unpublished opinion dated July 1, l997.  The Court of Appeals reasoned that the jury could have found that Newby's mouth penetrated D.C.'s vulva during the protracted

---

[4] The jury also convicted Newby of inanimate object sexual penetration and rape.  These convictions are not before the Court on this appeal.

assault and in the course of his effort to moisten her genitalia.  Newby appeals.

### III.  ANALYSIS

The issue in these cases is what constitutes sufficient evidence of penetration to support a conviction of forcible sodomy by engaging in cunnilingus in violation of Code § 18.2-67.1.[5]  "[P]enetration is an essential element of the crime of sodomy."  Ryan v. Commonwealth, 219 Va. 439, 444, 247 S.E.2d 698, 702 (1978).  However, penetration in sodomy, as in rape, can be proved by circumstantial evidence, and the penetration "need be only slight."  Id.

To resolve this issue, we first address the definition of cunnilingus.  Since Code § 18.2-67.1 does not define "cunnilingus," we must give the term its ordinary meaning.

_____

[5] The pertinent provisions of Code § 18.2-67.1 state the following:

> A.  An accused shall be guilty of forcible sodomy if he or she engages in cunnilingus, fellatio, anallingus, or anal intercourse with a complaining witness who is not his or her spouse, or causes a complaining witness, whether or not his or her spouse, to engage in such acts with any other person, and
> 1.  The complaining witness is less than thirteen years of age, or
> 2.  The act is accomplished against the will of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person, or through the use of the complaining witness's mental incapacity or physical helplessness.

8

McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970). Webster's Third New International Dictionary 554 (1993) defines cunnilingus as "stimulation of the vulva or clitoris with the lips or tongue." The term "cunnilingus" derives from the Latin words cunnus meaning vulva and lingere meaning to lick. Id. See also Black's Law Dictionary 380 (6th ed. 1990) ("[a]n act of sex committed with the mouth and the female sexual organ").

Our inquiry does not stop with the definition of cunnilingus. We must also address the anatomy of the female genitalia in relation to the act of cunnilingus. The female external genitalia, starting with the outermost parts, are: "the mons pubis, the labia majora et minora pudendi, the clitoris, vestibule, vestibular bulb and the greater vestibular glands. The term 'vulva' . . . includes all these parts." Henry Gray, Anatomy, Descriptive and Surgical 1446 (Peter L. Williams et al. eds., 37th ed. 1989); see also Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties 534 (Richard M. Patterson ed., 4th ed. Vol 5A 1997); accord State v. Ludlum, 281 S.E.2d 159, 162 (N.C. 1981).

We have previously recognized the significance of the anatomical structure of the female genitalia in relation to the element of penetration. In Moore v. Commonwealth, 254

9

Va. 184, 190, 491 S.E.2d 739, 742 (1997), we referenced the Court of Appeals' statement in Love v. Commonwealth, 18 Va. App. 84, 88, 441 S.E.2d 709, 712 (1994) that "penetration of any portion of the vulva which encompasses the 'external parts of the female sex organs considered as a whole' and includes, beginning with the outermost parts, the labia majora, labia minora, hymen, vaginal opening and vagina . . . , is sufficient to show penetration." In Rowland v. Commonwealth, 147 Va. 636, 136 S.E. 564 (1927), we held that penetration of the vulva was sufficient to affirm a conviction of rape. In that case, the doctor who had examined the victim testified that he was unable to "insert his finger in the female organ" because the hymen was intact but that there might have been penetration of the vulva without injury to the hymen. Id. at 638, 136 S.E. at 565.

Since cunnilingus involves stimulation of the vulva or clitoris and the vulva encompasses the outermost part of the female genitalia, we conclude that penetration of any portion of the vulva is sufficient to prove sodomy by cunnilingus. Penetration of the vaginal opening or vagina is not required. In other words, "insertion of the defendant's tongue into the victim's vagina need not be shown to prove cunnilingus." Love, 18 Va. App. at 88, 441

10

S.E.2d at 712; accord State v. Kish, 443 A.2d 1274, 1278 (Conn. 1982); Partain v. State, 492 A.2d 669, 672 (Md. Ct. Spec. App. 1985); State v. Thompson, 574 S.W.2d 432, 434 (Mo. Ct. App. 1977); State v. Brown, 405 N.W.2d 600, 607 (Neb. 1987); State v. Fraction, 503 A.2d 336, 338 (N.J. Super. Ct. App. Div. 1985); Ludlum, 281 S.E.2d at 162; State v. Beaulieu, 674 A.2d 377, 378 (R.I. 1996).

Turning now to the evidence in Horton's case, H.H. testified, in response to a question whether Horton did anything else to her vagina, that he licked it with his tongue. According to H.H., this act occurred after Horton had unsuccessfully tried to insert his penis into her vagina. Because of a Family Life course she took at school, H.H. asserted that she knew the words for the parts of the body. Her comprehension is evidenced by the fact that she herself used the words "vagina" and "penis" in describing Horton's attempt to insert his penis into her vagina.

Therefore, we conclude that this evidence, taken in the light most favorable to the Commonwealth, is sufficient to establish that Horton penetrated the vulva or outermost portion of H.H.'s genitalia when he licked her vagina, and in doing so, committed the act of sodomy by cunnilingus in violation of Code § 18.2-67.1. Horton's conviction is not

11

"plainly wrong or without evidence to support it."
Higginbotham, 216 Va. at 352, 218 S.E.2d at 537.

We reach the same conclusion in Newby's case.  D.C. testified that Newby "put his penis in [her] vagina" but pulled it out because she was unlubricated.  Newby then "put his mouth on [D.C.'s] vaginal area and . . . drooled."  The jury could have inferred from this evidence that Newby licked D.C.'s vagina or vaginal opening for the purpose of lubricating her since he then re-inserted his penis into her vagina.  Furthermore, D.C. specifically stated that Newby's mouth was on her vulva, and Newby admitted that he licked D.C.'s vaginal area.  This evidence proves penetration of D.C.'s outermost genitalia and is sufficient evidence upon which to affirm Newby's conviction of forcible sodomy by engaging in cunnilingus.  See also Ryan, 219 Va. at 444-45, 247 S.E.2d at 702 (affirming conviction for carnal knowledge by mouth in which victim testified that defendant licked her vagina with his tongue after attempting unsuccessfully to engage in sexual intercourse).

Both Newby and Horton argue that our decision in Moore is dispositive and underscores the insufficiency of the evidence of penetration in their respective cases.  We do not agree.  The critical factor in Moore was the victim's ambiguous testimony.  The victim did not know or could not

12

adequately describe the structure of her sexual anatomy and used the term "vagina" generally to describe the external portion of her genitalia.  Her testimony during the Commonwealth's case-in-chief demonstrated her lack of understanding since she testified that the defendant placed his penis "both 'in' and 'on' her vagina."  Moore, 254 Va. at 187-88, 491 S.E.2d at 741.  Finding the Commonwealth's evidence thus in a "state of equipoise on an essential element of the crime," we concluded that proof of penetration failed as a matter of law.  Id. at 189, 491 S.E.2d at 741.  See also Ashby v. Commonwealth, 208 Va. 443, 444, 158 S.E.2d 657, 658 (1968), cert. denied, 393 U.S. 1111 (1969) (finding evidence that boy's mouth was merely placed on man's genitals insufficient to prove penetration).

In contrast to Moore, neither H.H. nor D.C. testified equivocally about the nature of the sexual acts committed upon them by their respective assailants.  In addition, they each understood the structure of their genitalia and used the appropriate terms to describe their own anatomy as well as the anatomy of their assailant.  In no respect was the evidence in either Horton's or Newby's case in a "state of equipoise," as it was in Moore.

13

For these reasons, we will affirm the judgment of the Court of Appeals in each case.

Record Number 971645--<u>Affirmed.</u>
Record Number 971576--<u>Affirmed.</u>