*554 JUSTICE KINSER, with whom JUSTICE COMPTON
joins, dissenting.
As the majority correctly notes, affirmation of the defendant’s convictions requires a belief beyond a reasonable doubt that the error was harmless. Chapman v. Commonwealth, 386 U.S. 18, 24 (1967). Because I believe beyond a reasonable doubt that the admission into evidence of Mark Lilly’s out-of-court statements, while error, was harmless in that it did not unfairly “ ‘contribute to the [jury’s] verdict,’ ” Yates v. Evatt, 500 U.S. 391, 403 (1991) (quoting Chapman, 386 U.S. at 24), I would affirm the defendant’s convictions for capital murder and use of a firearm in the commission of capital murder.
I reach this result because the defendant has conceded that the admission into evidence of the challenged statements was harmless error in the several related convictions, a concession fully supported by the record. Thus, his claim that admission of the statements was not harmless as to the two convictions at issue here simply does not ring true. On brief, the defendant specifically stated that he “does not challenge that the admission of Mark Lilly’s statements was harmless error on [the defendant’s] convictions for robbery, abduction, carjacking, possession of a firearmf, and] illegal use of a firearm (except with respect to the use of a firearm to kill Alexander DeFilippis).”[1] The defendant asserts that the admission of his brother’s statements into evidence was not harmless error only with regard to his convictions for capital murder and use of a firearm in the commission of that murder. He characterizes the sole issue on remand as “whether the unconstitutional admission of Mark Lilly’s statements was harmless beyond a reasonable doubt on the question of whether Ben Lilly . . . was the triggerman.”
The defendant’s position that the admission of Mark’s statements was not harmless error as to the “triggerman” issue is predicated upon the defendant’s contention, which the majority accepts, that the statements improperly influenced the jury, since they corroborated the testimony of Gary Wayne Barker, and thus may have caused the jury to find that Barker was more credible than it otherwise might have found. The defendant contends that this Court should reverse his convictions for capital murder and the related firearms charge because “the Commonwealth is left with only with [sic] the testimony of Gary Barker that Ben Lilly was the triggerman,” and that *555 “[s]uch evidence is insufficient to make the admission of Mark Lilly’s statements harmless beyond a reasonable doubt.”
However, the defendant fails to acknowledge that the only evidence supporting the elements of the offenses of carjacking, abduction, and the use of a firearm in the commission of those crimes is also the testimony of Barker, coupled with the erroneously admitted statements of Mark.[2] In other words, those charges stand in the same evidentiary posture as the “triggerman” issue. If Barker’s testimony was sufficient to convict the defendant of the numerous offenses for which he was sentenced to life imprisonment, and the credibility of his testimony as to those offenses was not improperly supported by the admission of Mark’s statements, as the defendant concedes, I see no reason why the same is not true with regard to his convictions for capital murder and the related firearms charge.
I recognize that the defendant could have been found guilty of these other crimes as a principal in the second degree, rather than as the actual perpetrator, and that he could have been found guilty of the capital murder of DeFillipis only if he were the “triggerman.” However, that distinction does not change the fact that the only evidence supporting the defendant’s convictions for abduction, caq'acking, capital murder, and use of a firearm in committing those offenses is the same. Thus, if the admission into evidence of Mark’s out-of-court statements is harmless error as to any of the defendant’s convictions, it must be harmless error as to all of his convictions.
I also believe that the majority focuses too narrowly on whether the admission of Mark’s statements might have affected the jury’s *556 credibility determination, and thus contributed to the conviction, without looking at the credibility issue in light of the whole record. See Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (“an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt”). The defendant’s statement to Pearisburg Police Chief Whitsett shortly after being apprehended in Giles County[3] that the defendant “looked like a murderer” lends credence to Barker’s testimony that the defendant was the “triggerman.” While the majority contends that this statement establishes only guilt of first degree murder,[4] the statement, viewed in the light most favorable to the Commonwealth, Horton v. Commonwealth, 255 Va. 606, 608, 499 S.E.2d 258, 259 (1998), suggests that the defendant believed he looked like a murderer because he had pulled the trigger of the gun. Indeed, I believe that a defendant who confesses to murder does not necessarily make, understand or draw the distinctions between capital, first degree and other types of murder that the law recognizes. Thus, the defendant’s statement could properly be considered by the jury as an admission of guilt to being the “triggerman” in the murder of DeFilippis. Likewise, the defendant’s statement after being apprehended that Mark was not “the one that’s really done anything wrong” is probative of the defendant’s guilt.
In addition to these statements, the defendant’s confession, which was introduced into evidence at his trial, contained a number of false or inconsistent statements. For example, he stated that four people were involved in the Giles County robberies, and he gave inconsistent information regarding what time he joined Mark and Barker on the evening of the murder of DeFilippis. Notably, the defendant did not mention any of the crimes or events involving DeFilippis. False statements by a defendant may be probative of guilt. Sheppard v. Commonwealth, 250 Va. 379, 389, 464 S.E.2d 131, 137 (1995), cert, denied, 517 U.S. 1110 (1996); Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).
Finally, I conclude that the majority failed to determine whether, even if “the damaging potential of the cross-examination were fully *557 realized,” the jury’s verdict would still have been the same. Van Arsdall, 475 U.S. at 684. In my opinion, cross-examination of Mark in this case would not have adversely affected the credibility of Barker. Defense counsel called Mark during the sentencing phase of the defendant’s trial. There, Mark was a wholly unconvincing witness. In his haste to attempt to retract his out-of-court statements implicating his brother, he went so far as to attempt to retract his claim that the defendant robbed DeFilippis. However, nothing in Mark’s prior statements had directly implicated the defendant in the commission of that crime. The fact that the jury sentenced the defendant to death after hearing Mark’s retraction lends further support to my conclusion that the “ ‘minds of an average jury’ would not have found the [Commonwealth’s] case significantly less persuasive” had Mark’s statements been excluded. Schneble v. Florida, 405 U.S. 427, 432 (1972) (quoting Harrington v. California, 395 U.S. 250, 254 (1969)).
Thus, I am convinced that the admission into evidence of Mark’s out-of-court statements did not unfairly “ ‘contribute to the [jury’s] verdict’ ” convicting the defendant of capital murder and use of a firearm in committing that murder. Yates, 500 U.S. at 403, (quoting Chapman, 386 U.S. at 24). For these reasons, I respectfully dissent.

 At oral argument, he also conceded that he was guilty of murder.

 For example, the only evidence establishing that the defendant committed the crime of carjacking was the testimony of Barker, along with Mark’s statements. There were no other eyewitnesses to the carjacking, nor any forensic evidence linking the defendant to that crime. DeFilippis’ roommate testified that DeFilippis and his car disappeared near the location where defendant’s car was abandoned. However, that testimony was insufficient to prove that defendant was guilty of carjacking. The same analysis also applies to the charge of abduction.
With regard to the charge for the robbery of DeFilippis, Barker’s testimony is the sole evidence linking the defendant to that crime. Mark’s only comment that could be construed as being related to that robbery was that DeFillipis took his shirt and shoes off when DeFilippis and the defendant, who had a pistol, were alone outside the car. However, Mark stated that he could not hear anything that was being said by either man. Thus, I will not include the robbery conviction in my discussion with regard to the import of the defendant’s concession that the admission of Mark’s statements into evidence was harmless error with regard to all his convictions except those for capital murder and the use of a firearm in the commission of such murder. However, the defendant’s acknowledgement that his robbery conviction was proper demonstrates that Barker’s uncorroborated testimony was sufficient to convict the defendant of that charge.

 The defendant, Mark and Barker were arrested in Giles County and charged with two robberies that occurred there after the murder of DeFilippis.

 Harrison v. Commonwealth, 220 Va. 188, 191, 257 S.E.2d 777, 779 (1979), the case cited by the majority, does not support the majority’s position, but stands solely for the established proposition that only the “triggerman” may be convicted of capital murder.