COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Chaney and Callins

TRAVIS LARONE KIMBLE

v.     Record No. 1621-24-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
JANUARY 13, 2026

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A. B. Willis, Judge

(James Joseph Ilijevich, on brief), for appellant.

(Jason S. Miyares, Attorney General; Lindsay M. Brooker, Assistant
Attorney General, on brief), for appellee.


A jury convicted Travis Larone Kimble (appellant) of two counts of raping a victim

under 13 and two counts of object sexual penetration of a victim under 13.  The court sentenced

him to life imprisonment on each count.  Appellant challenges the sufficiency of the evidence to

sustain his convictions.  He also claims that the trial court erred by admitting certain evidence.

Finally, he alleges juror misconduct that required the court to grant a mistrial.[1]

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[2]

In 2017, appellant and Candace Burns began a romantic relationship in Arkansas. Upon appellant's suggestion, Burns and her two daughters, R.B. and M.B.,[3] moved to Virginia to live with him in 2018. In 2020, they all moved to Stafford County into a house in which the children had their own rooms. At the time, R.B. and M.B. were nine and eight years old, respectively.[4]

In the following year, appellant stayed at home with the girls while Burns was at work. During that time, appellant sexually abused R.B. In some instances, he entered R.B.'s room, removed her clothes completely, and "touched" her vagina with his penis, causing R.B. to "[feel] pain" on her "private part." On multiple occasions, appellant applied a vibrator to the "outside" of R.B.'s vulva and moved it "up and down." And he "touch[ed]" the "inside" of her vagina "with his hands." Appellant also showed R.B. pornographic videos and told her to keep it a secret from her mother.

Burns and her daughters moved out of the house after about a year, at the end of the summer of 2021, when R.B. was about 10 years old. R.B. testified that she told her school counselor, Ami Brown, about the abuse. Brown contacted Burns, and Burns relayed her plan to get R.B. therapeutic help to learn more details about the situation from R.B. When Burns asked her daughter for more information about what happened, R.B. "retract[ed]" the allegations. Burns did not contact the police.

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *See Cady*, 300 Va. at 329.

[3] We use initials, instead of names, to protect the privacy of the victim. *Grimaldo v. Commonwealth*, 82 Va. App. 304, 312 n.3 (2024).

[4] In 2023, at the time of the trial, R.B. and M.B. were 12 and 11 years old, respectively.

A few months later, Brown spoke with R.B. again. During that conversation, R.B. "report[ed] things" that required Brown to involve Child Protective Services (CPS). As a result, the Stafford County Sheriff's Office opened an investigation in May 2022. A county social worker, Jennifer Dudley, conducted a forensic interview with R.B. concerning the abuse, and appellant was ultimately arrested.

Before trial, the Commonwealth moved to admit into evidence a video recording of Dudley's forensic interview with R.B. At the motion hearing, Dudley testified to her education, her training in conducting forensic interviews, and the interview process. The court reviewed the video and found that R.B. exhibited "significant personal knowledge of the event" and "explain[ed] the incident in age-appropriate" terms. R.B. "relate[d] the facts" in a "sufficiently and inherently trustworthy" manner. The interview did not demonstrate any motive for R.B. to "falsify" or "distort the event." Further, the details relayed by R.B. "len[t] credibility" to her statements. Ultimately, the court held that "the totality of the circumstances surrounding [R.B.'s] statement provide[d] sufficient indicia of reliability so as to render the statement inherently trustworthy."

At trial, R.B. testified about the timeline of the abuse, the process of coming forward, and the forensic interview. Although R.B. sometimes did not "feel comfortable answering" the Commonwealth's questions aloud, she wrote her responses on a sheet of paper for the jury, describing the incidents of abuse. The video of the interview was played for the jury.

In the interview, R.B. repeatedly stated that appellant "tried to penetrate" her. R.B. clarified that appellant tried to put "his dick" in her "private parts," "multiple times," and told her, "Oh fuck me." R.B. specifically described an instance in which appellant came into her room while she was sleeping, removed his underwear, pulled down her shorts, and "put his private part in [hers]." She said it "hurt" when he tried to "put his penis inside [her] vagina."

Appellant also gave her a "fake dick" and "forced [her] to use it." R.B. said appellant assaulted her "more" times than she "could remember" and warned her not to "tell anyone this was happening" or he would "do something" to her. R.B. believed appellant meant to hurt her if she told anyone.

The jury convicted appellant on all counts. At appellant's request, the court polled the jury, and each juror confirmed the verdict. Five months after the trial, but before sentencing, the Stafford County Sheriff's office received an email from one of the jurors, Juror 24. In the email, Juror 24 stated that he no longer felt like he was "fit to be on jury duty and may have hid[den] information during the selection process that would have [caused him to be] struck" from the jury. Appellant moved for a mistrial. The court ordered a post-trial hearing and subpoenaed Juror 24 to appear.

At that hearing, Juror 24 stated that he struggles with mental illness to varying degrees during his day-to-day life. At the time of appellant's trial, however, he "thought [he] was doing good" managing his mental health. Though he had reservations during voir dire concerning his mental fitness, he did not advise the court at the time because he "felt like [he] was in a good space" and "wanted to be on jury duty." Still, Juror 24 worried that he may not have "voted honest[ly]" to convict appellant and that he "made the wrong decision." He had been "50/50" about voting to convict appellant but did not raise his concerns during deliberations or during the court's poll. And he "lie[d]" during the poll.

Juror 24 stated that upon conferring with his father after trial, he became aware of "something" that led him to second-guess his fitness as a juror. Juror 24 confirmed that he was "able to listen and think about what was being said" during deliberations and he was able to "focus" during trial. Ultimately, Juror 24 agreed that his concerns about his fitness to serve on the jury were not present during appellant's trial and only arose in the following months.

- 4 -

The court found that Juror 24's responses at the hearing were "[a]t best . . . conflicting and at wors[t] simply confused." During voir dire, "the only thing he hid was his mental health" condition. The court found "that [Juror 24's] doubts arose after the case had concluded and [after] he consulted with his father." Considering that his "subsequent doubts reflect discussions with others" after the trial ended, the court determined they were "not sufficient to support a Motion to Set aside the Verdict." Having summoned Juror 24 to "investigate" the possible juror misconduct, the court found that Juror 24 "simply withheld information as to his mental health condition and . . . that alone cannot form the basis" for overturning a jury verdict. Thus, the court denied appellant's motions.

ANALYSIS

I. Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

A. Credibility of the Complaining Witness

"[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). "[B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." *Id.* at 88 (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 191 (1989)).

Appellant argues that R.B.'s testimony was uncorroborated and inherently incredible. He points to R.B.'s delayed report of the abuse. Likewise, he highlights Burns's failure to immediately report R.B.'s disclosures to authorities and notes that Burns "seemed not to believe" R.B.'s allegations initially. Appellant also relies on inconsistencies between R.B.'s forensic interview and her trial testimony to argue it rendered her testimony "inherently incredible."

"[T]he credibility of witnesses and the weight to be given to their testimony are questions exclusively for the jury." *Bailey v. Commonwealth*, 78 Va. App. 650, 666 (2023) (quoting *Johnson v. Commonwealth*, 224 Va. 525, 528 (1982)). The jury's conclusions on witness credibility will not be disturbed unless the witness's testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022); *Grimaldo v. Commonwealth*, 82 Va. App. 304, 320-21 (2024). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Bailey*, 78 Va. App. at 667 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

We have repeatedly held that the "failure to immediately report" an incident of sexual abuse does not render a victim's "testimony inherently incredible as a matter of law." *Corvin v.*

*Commonwealth*, 13 Va. App. 296, 299 (1991); *see also Grimaldo*, 82 Va. App. at 323. While the absence of a "credible explanation" for a delayed report may "cast[] 'suspicion and doubt' on the victim's testimony," *Wilson*, 46 Va. App. at 88, the significance of a delay, and its effect on a victim witness's credibility are questions for the jury, *Corvin*, 13 Va. App. at 299; *Love v. Commonwealth*, 18 Va. App. 84, 90 (1994). A "victim's youth, fright and embarrassment certainly provide[] . . . an acceptable explanation for [delayed reporting of sexual assault]." *Cruz v. Commonwealth*, 84 Va. App. 703, 728 (2025) (first and third alterations in original) (quoting *Corvin*, 13 Va. App. at 299).

R.B. was 9 to 10 years old when appellant abused her, and 12 years old at trial. Appellant specifically warned R.B. not to tell anyone about the abuse or he would "do something," which she interpreted as a physical threat. The jury could consider R.B.'s "youth, fright and embarrassment" as credible explanations for her delay in reporting. *Cruz*, 84 Va. App. at 728. And "[t]he jury was entitled to attribute such significance as it deemed appropriate" to the delay. *Corvin*, 13 Va. App. at 299. Likewise, any purported inconsistencies between R.B.'s forensic interview and their impact on her as a witness were "matters solely for the fact finder's determination." *Smith v. Commonwealth*, 85 Va. App. 435, 457 (2025) (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020)). "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Id.* (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). There was nothing so "manifestly false" about R.B.'s testimony "that reasonable men ought not to believe it," nor was it "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Bailey*, 78 Va. App. at 667.

B. Evidence Supporting Two Counts of Object Sexual Penetration

A defendant is guilty of "object sexual penetration if he . . . penetrates the labia majora . . . of a complaining witness . . . or causes such complaining witness to so penetrate his or her own body with an object . . . and . . . [t]he complaining witness is less than 13 years of age." Code § 18.2-67.2(A)(1). To sustain a conviction under Code § 18.2-67.2, "penetration 'need be only slight.'" *Jett v. Commonwealth*, 29 Va. App. 190, 194 (1999) (en banc) (quoting *Horton v. Commonwealth*, 255 Va. 606, 612 (1998)). "Penetration may be proved by circumstantial evidence and is not dependent on direct testimony from the victim that penetration occurred." *Id.* "Penetration of the vaginal opening . . . [is] not required." *Id.* at 195 (second alteration in original) (quoting *Love*, 18 Va. App. at 88). "[P]enetration of *any* portion of the vulva, which encompasses the external parts of the female sex organs considered as a whole and includes . . . the labia majora, . . . is sufficient to establish the element of penetration." *Id.* (first alteration in original) (emphasis added) (quoting *Moore v. Commonwealth*, 254 Va. 184, 190 (1997)).

Appellant claims that the evidence only established one count of object sexual penetration. He argues that R.B. "could only state one specific time . . . that [he] penetrated her vagina," and although "she stated that he rubbed a vibrator on her… she did not say there was any penetration."

R.B. recalled appellant "touch[ing]" the "inside" of her vagina "with his hands." *Davis v. Commonwealth*, 272 Va. 476, 479-80 (2006) (finding that the victim's statement that "the defendant put his finger 'inside' the front area of the lips of her vagina" was sufficient to find penetration). Appellant also forced her to use a "fake dick" and applied a vibrator to the "outside" of R.B.'s "private" and moved it "up and down," on multiple occasions. R.B. recalled feeling "pain" and stated that it "hurt" when appellant touched his "private part" to the "outside" of her "private." The jury could infer that penetration occurred because R.B. felt "pain" even

- 8 -

though she characterized appellant's contact as being on the "outside" of her "private area." *Jett*, 29 Va. App. at 195-97 (holding that there was sufficient evidence of penetration when the victim testified that appellant touched the "outside" of her "pookie" and there was "evidence of the victim's pain and [of her] swollen clitoris"). The jury similarly was permitted to conclude that appellant's use of a vibrator on R.B. constituted penetration because she testified to the pain it caused her. Finally, during the forensic interview, R.B. stated that appellant had "put his private part in [hers]" "multiple times" and that it "hurt." "[T]his Court does not substitute its judgment for that of the trier of fact." *Jett*, 29 Va. App. at 194 (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 644 (1997)). The court therefore did not err in denying appellant's motion to strike the second count of object penetration.

## II. Admission of Statements Under Code § 19.2-268.3

"When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse of discretion standard." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024). "[W]e consider only whether the record fairly supports the trial court's action." *Id.* (quoting *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

"An out-of-court statement made by a child who is under 13 years of age at the time of trial or hearing who is the alleged victim of an offense against children describing any act directed against the child relating to such alleged offense shall not be excluded as hearsay." Code § 19.2-268.3(B). To introduce a child victim's statements, the court must find "that the time, content, and totality of circumstances surrounding the statement provide sufficient indicia of reliability so as to render it inherently trustworthy." Code § 19.2-268.3(B)(1). In doing so, the court may consider

        a. The child's personal knowledge of the event;
        b. The age, maturity, and mental state of the child;

c. The credibility of the person testifying about the statement;
d. Any apparent motive the child may have to falsify or distort the event, including bias or coercion;
e. Whether the child was suffering pain or distress when making the statement; and
f. Whether extrinsic evidence exists to show the defendant's opportunity to commit the act.

*Id.* The enumerated statutory factors are "nonexclusive" and "are merely 'among' those that a trial court *may* consider." *Bista*, 303 Va. at 369 (emphasis added). If the child also testifies, the statement may be admitted without corroborative evidence. Code § 19.2-268.3(B)(2)(a); *Bista*, 303 Va. at 369.

Appellant argues "that the Commonwealth did not meet the reliability requirement for introducing" R.B.'s forensic interview into evidence because her statements were inconsistent and lacked detail. He also claims that R.B. had a motive to fabricate the allegations and that no evidence corroborated her account.

R.B.'s interview lasted over an hour and a half. She gave a detailed account of the abuse. She recalled things appellant said and described the abuse and human anatomy in colloquial terms. The court found that R.B. exhibited "significant personal knowledge of the event" and "explain[ed] the incident in age-appropriate" terms. The court did not find any motive for R.B. to "falsify" or "distort the event." It found R.B. credible and her statements "sufficiently and inherently trustworthy." Ultimately, the court held that "the totality of the circumstances surrounding [R.B.'s] statement provides sufficient indicia of reliability so as to render the statement inherently trustworthy."

R.B. testified at trial; corroboration of her allegations was therefore not necessary to admit the interview. Code § 19.2-268.3(B)(2)(a); *Bista*, 303 Va. at 369. "[M]atters regarding the admissibility of evidence, including underlying factual issues, are solely within the province of a trial court." *Bista*, 303 Va. at 370 (alteration in original) (quoting *Bloom v. Commonwealth*, 262

Va. 814, 821 (2001)).  A victim's inconsistent statements or motive to fabricate allegations are credibility issues for the fact finder's determination.  *Grimaldo*, 82 Va. App. at 324 ("Like inconsistent or contradictory statements, a witness's ulterior motive and bias are factors to be weighed by the factfinder.").  Because the court's findings were supported by evidence, we find no abuse of its discretion.  *Bista*, 303 Va. at 370.

### III.  Juror Misconduct

"[A] motion for a new trial on the ground of juror misconduct is addressed to the sound discretion of the trial judge."  *Bethea v. Commonwealth*, 68 Va. App. 487, 506 (2018) (alteration in original) (quoting *Evans v. Commonwealth*, 39 Va. App. 299, 237-38 (2002)), *aff'd*, 297 Va. 730 (2019).  "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result."  *Id.* at 506-07 (quoting *Swann*, 290 Va. at 197).  A "trial court's denial of a motion for a mistrial will not be reversed 'unless there exists a manifest probability that the denial of a mistrial was prejudicial.'"  *Id.* at 507 (quoting *Humbert v. Commonwealth*, 29 Va. App. 783, 792 (1999)).

Appellant argues that Juror 24's failure to disclose his mental health concerns when the court asked if anyone "felt that 'they should not sit on the jury'" was a "material misstatement" and, therefore, prejudicial.  Appellant alleges that "disclosure by Juror 24 that he was a mental health patient who was not currently taking prescribed medications would have been considered by any competent trial counsel."  He claims that Juror 24's "mental health is a possible, maybe probable, contributor" to his efficacy as a juror and the outcome of the trial.

The "mere fact of juror misconduct does not automatically entitle" the defendant to a mistrial.  *Robertson v. Metro. Wash. Airport Auth.*, 249 Va. 72, 76 (1995).  The moving party has the burden to establish that the alleged misconduct "probably resulted in prejudice," a determination entrusted to the trial court's discretion.  *Id.*  "[I]f the misconduct is discovered after the jury is

discharged . . . , a trial court abuses its discretion in ruling upon a motion for a mistrial without investigating the alleged misconduct to ascertain whether it prejudiced the case." *Id.*

"[F]or a litigant to be entitled to a mistrial based on jury misconduct on voir dire, 'a party must first demonstrate that a juror failed to answer honestly a material question on voir dire.'" *Blevins v. Commonwealth*, 40 Va. App. 412, 426 (2003) (quoting *Taylor v. Commonwealth*, 25 Va. App. 12, 18 (1997)), *aff'd*, 267 Va. 291 (2004). The movant must "then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* (quoting *Taylor*, 25 Va. App. at 18). A juror's "motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.* (quoting *Taylor*, 25 Va. App. at 18). "[W]e will disturb the trial court's decision regarding juror impartiality 'only upon a showing of manifest error.'" *Id.* at 427 (quoting *Weeks v. Commonwealth*, 248 Va. 460, 475 (1994)).

During voir dire, Juror 24 disclosed that he had been charged with a crime in 2014 in a different jurisdiction. But he confirmed that his past experience would not render him unable to hear the case. Otherwise, Juror 24 did not give any notice of issues concerning his possible bias, impartiality, or fitness to serve as a juror. Notably, no one inquired about the prospective jurors' mental health. It was not until months after trial, and after conferring with his father about the case, that Juror 24 felt that he may not have been up to the task of jury duty. At a post-trial hearing, Juror 24 testified that when he appeared for jury duty he was "in a good space" and "thought [he] was doing good" managing his mental health. The court found that the only information Juror 24 possibly withheld concerned his mental health condition and that the juror's doubts about his fitness resulted from outside influence after the trial ended.

The record supports the conclusion that Juror 24's non-disclosure was not a material misstatement in response to the court's question whether anyone felt that they should not sit on the

jury. *Blevins*, 40 Va. App. at 427 (explaining that "[o]nly an intentionally incorrect response may provide a basis for the granting of a mistrial"). Likewise, he did not "fail[] to answer honestly a material question" because there was no question asked about his mental health. *Id.* at 426. Finally, Juror 24's stated motive for not disclosing his mental health condition, that he desired to serve on the jury, cannot "truly be said to affect the fairness of a trial." *Id.* Therefore, the court did not err because it investigated the juror misconduct and because the record supports the court's conclusions.

CONCLUSION

For these reasons, we affirm appellant's conviction.

*Affirmed.*