# COURT OF APPEALS OF VIRGINIA

### Record No. 1142-25-4

GREGORY CLARK

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Raphael, Lorish and Frucci

Opinion Issued May 19, 2026[*]

### FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Petula C. Metzler, Judge

(Paul C. Galanides, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Ramy R. Simpson, Assistant Attorney General, on brief), for appellee.

### MEMORANDUM OPINION
### PER CURIAM

Following a jury trial, Gregory Clark was convicted of one count of sodomy and two counts of object sexual penetration. The circuit court sentenced him to 60 years of incarceration, with 42 years and 10 months suspended. On appeal, Clark challenges the sufficiency of the evidence to sustain the sodomy conviction. He also asks this Court to apply the ends of justice exception to Rule 5A:18 to consider his double jeopardy challenge to the two object sexual penetration convictions. For the following reasons, we affirm the circuit court's judgment.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[3]

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

Clark's niece, I.P.,[4] lived in Georgia with her mother. I.P. viewed Clark as a "father figure" whom she had known "all [her] life." I.P., her mother, and her best friend, Janis Evans, went to Clark's home in Virginia to visit. While they were socializing, I.P. had three alcoholic drinks and two shots of moonshine that Clark provided. She said that the drinks were "strong" and that she did not drink on a regular basis.

Later during the visit, I.P., who was by then "intoxicated," "stumbled" into a bathroom. She vomited, then laid on the bathroom floor with her "underwear and shorts" down. When her mother and Evans came to help, I.P. was too intoxicated to respond to them even when her mother put cold water on her face. I.P. felt her mother and Evans pulling up her underwear and shorts, then "it got quiet" and she fell asleep on the floor.

When she awoke, I.P. was on Clark's bed and he had his "mouth on [her] vagina," "licking" it. Her underwear and shorts were off. She was "still intoxicated" and "could barely move." When she asked Clark where her children were, her speech was "slurred." Clark

---

[3] Parts of the record in this case were sealed. "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

[4] We refer to the victim by her initials to protect her privacy.

"shoved his two fingers into [her] vagina," left to "get some Vaseline," then returned and "put his fingers in [her] vagina" a second time.

Later, I.P. awoke on a couch in the "basement," wearing "no underwear and no shorts," and did not know how she got there. She found her clothes in the room, then found Clark in his bedroom and said she wanted to leave. I.P. still felt intoxicated and "her vagina was hurting." Clark asked if she "was okay" during the drive to the hotel; she told him she was not. I.P. felt "disgusted" during the drive to the hotel and arrived around midnight.

As soon as she arrived at the hotel, her mother heard her crying and I.P. told her mother that Clark had sexually assaulted her. After disclosing the assault to other family members, I.P. called the police. She gave a statement at the hotel to Prince William County Police Officer James Frish who determined that an SVU detective[5] was required. I.P. was initially calm during her statement to Frish but then started crying. Frish collected I.P.'s clothes as evidence, then took her to the police station.

Detective Michael LaPlant interviewed I.P. at 2:18 a.m. that morning. She told him that while she was at Clark's house, she was "in and out of consciousness" due to her intoxication. She awoke to find Clark performing "oral sex on her" and inserting two fingers in her vagina on two separate occasions, first without, then with, Vaseline. I.P. also told LaPlant that Clark had sexually assaulted her when she was between eight and fifteen years old, by placing his fingers into her vagina through her clothing during visits to her aunt's house. LaPlant arranged a forensic sexual assault examination (SANE) for later that morning. The forensic evidence collected was submitted to the Department of Forensic Science (DFS) lab for analysis.

LaPlant telephoned Clark for an interview two days later. Clark "exercised his right not to speak," although he asked whether there was "an incident made about [him]." LaPlant

---

[5] A detective that specialized in sexual assault.

collected a buccal swab for DNA testing from Clark and submitted it to DFS for analysis. A subsequent search of Clark's house yielded a Vaseline jar, which was submitted along with the bedding for forensic analysis.

Clark was charged in part with forcible sodomy and two counts of object sexual penetration. In a jail call with his wife, Clark spoke about removing I.P.'s clothes and cleaning them, about I.P. vomiting and using the bathroom, and then "carrying, taking her to the bed."

At trial,[6] I.P. recounted the event and her mother's and Evans's attempts to revive and dress her when she was in the bathroom. She denied vomiting on her clothing. I.P. acknowledged that she made the 911 call which was played for the jury. During the call, she denied that there was any penile penetration. She added that she did not feel Clark's tongue inside her vagina when he was licking her. I.P. described vomiting a few times after she returned to the hotel and during the interview with LaPlant because she was "coming down from being intoxicated." I.P. still felt "the effects of the alcohol" during the forensic examination and reported pain and tenderness in her vagina. I.P. had had no pain, irritation, or redness in her vaginal area before the sexual assault.

I.P.'s mother recounted that I.P. "wouldn't wake up" when they found her in the bathroom, even when they applied cold water to her face. Evans confirmed that I.P. was unresponsive, and had her eyes closed. Evans tried to lift I.P. from the floor but found her "dead weight" too heavy. Both I.P.'s mother and Evans agreed that although Clark was in the bathroom, he "was just standing there watching" and did not offer to help lift I.P. Clark told them that "she can just sleep it off" and that he would "drop her off at the hotel when she wakes up." Before I.P.'s mother and Evans left to drive I.P.'s children to the hotel, Clark brought in a

---

[6] Before trial, the parties stipulated to the authenticity of the 911 call recording and Clark's jail call. They also stipulated to the forensic physical evidence and the DFS certificate of analysis for the Vaseline jar and lid.

pillow and a blanket, and Evans placed the pillow under I.P.'s head and covered her with the blanket.

SANE nurse Sydney Marks performed the sexual assault examination of I.P. Marks confirmed that I.P. reported that Clark made digital and oral genital contact and that "she woke up to the suspect performing oral sex on her." I.P. also disclosed to Marks that Clark repeatedly stuck "his fingers in [her] vagina" when she was a child. Marks found erythema[7] around the fossa, which is a band of tissue beyond the vulva close to the hymen in female genitalia. Marks swabbed I.P.'s "thighs and external genitalia," vagina, and mouth, and collected pubic combings and blood samples. Marks sealed the swabs and other samples in a physical evidence recovery kit (PERK).

Kelly Loynes, a forensic scientist with DFS, developed a DNA profile for Clark from the buccal swab and compared it to the swabs and samples from I.P.'s PERK. Loynes "could not eliminate [Clark] as a contributor" to DNA identified from I.P.'s thighs and external genitalia samples. She concluded that the statistical probability of a contributor to the DNA profile other than Clark was "1 in greater than 8.1 billion" people. Loynes opined that the absence of male DNA in I.P.'s vaginal and cervical swabs could happen because of the frequency of "going to the bathroom and wiping that area" and would "serve[] to lessen or remove that biological material."

At the close of the Commonwealth's case, Clark moved to strike the evidence on all charges. He argued that placing his mouth on I.P.'s vagina was insufficient to prove the element of penetration and disputed the value of the DNA evidence. The Commonwealth argued that I.P. specifically testified that Clark licked her vagina and that licking is sufficient to prove penetration. The circuit court denied Clark's motion to strike.

---

[7] Abnormal redness.

Clark declined to present evidence. Clark renewed his motion to strike, which the circuit court denied. The jury convicted Clark of sodomy and two counts of object sexual penetration.[8]

At sentencing, Clark challenged the sufficiency of the evidence. He stated that a sentence should not be imposed because he thought "it was a total mistake" and that he "didn't do these crimes." The circuit court sentenced Clark to 60 years' incarceration, with 42 years and 10 months suspended. Clark appeals.

ANALYSIS

I. The evidence supports the jury's verdict.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v.*

---

[8] The jury acquitted him of an additional charge of object sexual penetration of a child under 13 years old.

- 6 -

*Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

As relevant here, a defendant is "guilty of forcible sodomy" if he "engages in cunnilingus" with a victim and the "act is accomplished against the will of the complaining witness . . . through the use of the complaining witness's mental incapacity or physical helplessness." Code § 18.2-67.1(A)(2). Cunnilingus is defined as the "stimulation of the vulva or clitoris with the lips or tongue." *Horton v. Commonwealth*, 255 Va. 606, 612 (1998). The vulva "encompasses the 'external parts of the female sex organs considered as a whole' and includes, beginning with the outermost parts, the labia majora, labia minora, hymen, vaginal opening and vagina." *Love v. Commonwealth*, 18 Va. App. 84, 88 (1994) (quoting 4 J.E. Schmidt, *Attorneys' Dictionary of Medicine* V-106 (18th ed. 1990)).

Penetration is "an essential element of the crime of sodomy." *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 47 (2019) (quoting *Ryan v. Commonwealth*, 219 Va. 439, 444 (1978)). Penetration "may be proved by circumstantial evidence, and the penetration 'need only be slight.'" *Bowden v. Commonwealth*, 52 Va. App. 673, 677 (2008) (quoting *Ryan*, 219 Va. at 444). So "insertion of the defendant's tongue into the victim's vagina need not be shown to prove cunnilingus." *Horton*, 255 Va. at 613. Penetration of "any portion of the vulva is sufficient to prove sodomy by cunnilingus." *Alvarez Saucedo*, 71 Va. App. at 47 (quoting *Horton*, 255 Va. at 615). The "issue of penetration is a question for the jury upon the evidence in the case." *Ryan*, 219 Va. at 444.

I.P. was intoxicated, slipping in and out of consciousness. She was unresponsive when her mother and Evans found her in the bathroom, and when they left her there with a pillow and a blanket because they could not lift her. She awoke on Clark's bed; he was licking her vagina. At trial, Clark did not dispute the Commonwealth's argument that licking established penetration.

The forensic sexual examination revealed abnormal redness, pain, and tenderness in I.P.'s vagina and external genitalia. Clark could not be eliminated as the contributor to the DNA mixture from I.P.'s thighs and external genitalia.

The jury had the opportunity to observe I.P.'s demeanor throughout the trial and from the recorded interviews made in the immediate aftermath of the assault. In its role as fact finder, the jury had the sole responsibility of determining I.P.'s credibility and the weight to assign to her testimony. *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (citing *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). The evidence presented permitted the jury to find that Clark "penetrated the vulva or outermost portion" of I.P.'s genitalia when he licked her vagina. Thus, the jury reasonably found that Clark committed the "act of sodomy." *Horton*, 255 Va. at 614.

II. Clark waived his double jeopardy challenge.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "[W]e have repeatedly held that even constitutional claims can be barred by Rule 5A:18." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 75 (2015) (holding due process challenge to sufficiency of evidence waived).[9]

On appeal, Clark argues that he was subject to punishment for only one charge of object penetration, not two. Thus, he concludes that the two convictions violated his constitutional protection against double jeopardy. He concedes that he did not comply with the

---

[9] *See, e.g.*, *Pereira v. Commonwealth*, 83 Va. App. 431 (2025) (Fifth Amendment); *Perry v. Commonwealth*, 58 Va. App. 655 (2011) (Sixth Amendment); *West v. Commonwealth*, 43 Va. App. 327 (2004) (double jeopardy); *Ohree v. Commonwealth*, 26 Va. App. 299 (1998) (equal protection); *Cottrell v. Commonwealth*, 12 Va. App. 570 (1991) (arbitrary revocation).

contemporaneous objection requirement of Rule 5A:18 but asks us to apply the ends of justice exception.

The ends of justice exception "applies only in the extraordinary situation where a miscarriage of justice has occurred." *Moroney v. Majerus*, 82 Va. App. 737, 760 (2024) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). To avail himself of the exception, the appellant "must affirmatively show that a miscarriage of justice has occurred." *Id.* (quoting *Conley*, 74 Va. App. at 683). "To demonstrate a miscarriage of justice, appellant 'must show that either the conduct for which he was convicted is not a criminal offense or that the record affirmatively establishes that an element of the offense did not occur.'" *Jiddou v. Commonwealth*, 71 Va. App. 353, 374 (2019) (quoting *Phan Le*, 65 Va. App. at 74). "[L]ack of proof is not affirmative evidence to the contrary, which would warrant exercising the 'ends of justice' exception to Rule 5A:18." *Phan Le*, 65 Va. App. at 75-76. "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley*, 74 Va. App. at 683).

Clark argues that it was a "manifest injustice" for the circuit court to convict him of two counts of object sexual penetration because "an element of the offense did not occur." According to Clark, the injustice in imposing two punishments is "clear, substantial, and material because he was subjected to double jeopardy." *West v. Commonwealth*, 43 Va. App. 327, 339 (2004). He contends that his case is "distinguishable" from cases in which this Court found no double jeopardy violations but fails to articulate how the evidence *disproved* a second offense.

If an accused "penetrates the labia majora" through the "use of the complaining witness's mental incapacity or physical helplessness," he shall be guilty of object sexual penetration. Code § 18.2-67.2. I.P. testified that while she was deeply inebriated, Clark penetrated her vagina with two fingers. He then left the room but returned a short time later and digitally penetrated her

vagina a second time. I.P.'s testimony established two separate acts of penetration. Thus, Clark has not met his burden to prove a manifest injustice, so his double jeopardy challenge is waived. Rule 5A:18.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*